## WILLIAM ELDER

*v.*

## WILLIAM H. DERBY *et al.*

*Filed at Springfield March 21, 1881.*

1. MORTGAGE—*cut out by sale on prior lien.* Where the owner of lots conveys them to another after the levy of an execution against him from another county, and the recording of the certificate of the levy thereon, and such grantee mortgages the same to a third person, a subsequent sale under the execution and levy, and a sheriff's deed to the purchaser, after the expiration of the time for redemption, will extinguish the lien of the mortgage on the property.

2. RECORDING LAW—*applies only to subsequent purchasers, and not to prior ones.* Where A executed a mortgage on lots to B, and the same were subsequently sold under a prior lien against the same, and the time for redemption passed, whereby the mortgage lien was extinguished, and about a year after the date of the mortgage, A bought the same lots of the holder of the title, giving him a mortgage for the purchase money, which the vendor failed to place on record for several months, it was *held* that while the mortgage from A to B was revived as to the title subsequently acquired by A, B was not a subsequent purchaser, under the recording laws, and did not acquire a prior lien on the lots from the delay in A's grantor to record his mortgage.

3. SUBSEQUENTLY ACQUIRED TITLE—*to whom it will inure.* Where a party gives a deed or mortgage on land, the title to which fails, and the grantor or mortgagor afterwards acquires the title by deed, giving a mortgage back, as a part of the same transaction, to secure the purchase money, he will not in equity become seized of the title so subsequently acquired in such a manner that it will inure to his former grantee or mortgagee under the covenants of title in his deed or mortgage, as against the second mortgage.

4. When a mortgage is in the statutory form, it is equivalent to one containing all the covenants of title, and any title the mortgagor may subsequently acquire, will inure to the benefit of the mortgagee in the same con-

Statement of the case.

dition the mortgagor took the same, and will revive such mortgage, if extinguished by sale under a prior lien, to the extent of such newly acquired title, but no further.

APPEAL from the Appellate Court for the Third District; —heard in that court on appeal from the Circuit Court of Moultrie county; the Hon. C. B. SMITH, Judge, presiding.

Appellant filed his bill in chancery, against William Derby, superintendent of schools of Logan county, and a number of other persons, to foreclose a mortgage executed by William Hoggatt to William Elder and George W. Hoggatt, to indemnify them as sureties on a note for $2161.20, given to one Morrill. It is conceded that Elder had paid this note. This mortgage covered the lots in controversy.

Derby and Aultman & Co. answered, and the bill was dismissed as to Bassett, and taken as confessed as to the other defendants. It is conceded that the claim of Aultman & Co. is subordinate to that of appellant and appellee. On a hearing the court decreed Derby's mortgage a first lien on the lots, and the case is brought here by appeal from the Appellate Court.

The parties submitted the cause to be tried by the court, on the following agreed facts: That one James Earp, and Samuel Earp, his security, were recognized, in the sum of $1000, to appear and answer a charge of felony against the principal, in the circuit court of Logan county, on the 6th day of February, 1875. The recognizance was forfeited, and a judgment was rendered by the court thereon, against both recognizors, at the following May term. An execution issued thereon to the sheriff of Moultrie county, who, on the 20th day of July, 1875, levied the same on lots one and two in block eight, of the town of Sullivan. Samuel Earp was the owner of the same in fee. The certificate of levy was filed, the land advertised, and sold on the 9th of September, 1875, to T. T. Beach, State's attorney of Logan county. The time for redemption expired,

and the sheriff made a deed for the lots on the 13th of February, 1877, to Hoblit, the successor of Beach.

On the 24th day of April, 1877, Hoblit conveyed the lots to James G. Chalfant, school superintendent of Logan county. On the 9th day of June, 1877, Chalfant sold the lots to William Hoggatt, and then and there delivered to him a good and sufficient deed of warranty for the same, and took his (Hoggatt's) note and mortgage on same for $1000, the unpaid portion of the purchase money of said premises. Said mortgage was acknowledged by said Hoggatt on the 14th day of July, 1877, and by the wife of said Hoggatt on the 9th day of August, 1877, and was filed for record in the recorder's office of said Moultrie county, on the 23d day of October, 1877. The note and mortgage were assigned and delivered to Derby by Chalfant, as his successor in office, in December, 1877. William Hoggatt is insolvent, has left the State, and at the time of leaving he gave possession of the premises to Elder. On the 3d of September, 1875, Samuel · Earp and wife conveyed the premises, by warranty deed, to William Hoggatt, and the deed was recorded on the 18th day of September, 1875, the property having been levied on by the sheriff on the 20th day of the previous July. On the 22d of April, 1876, Wm. Hoggatt mortgaged this and other property to George W. Hoggatt and William Elder, and the mortgage was filed for record on the 11th day of October, 1876. The condition had been broken and Elder had been forced to pay the money to secure which the mortgage was given, to-wit: $2161.20 and interest, which had not been repaid to him; "that at no time on and after the 9th day of June, 1877, and before said 23d day of October, 1877, did the said William Elder or the said George W. Hoggatt have any notice or knowledge (except what might be implied by law) of the existence of said mortgage to said Chalfant, the same not having been made a matter of record until the 23d day of October, 1877,—or that the whole or any part of the purchase money for said premises, was due or unpaid from

said Hoggatt;" that neither Elder nor G. W. Hoggatt made any inquiry in reference to the matter; that Chalfant was not in possession of the premises, on or after June 9th, until the 23d of October, 1877, by himself or otherwise, and never was in possession; that George W. Hoggatt has sold his interest in the mortgage to Elder.

The deed from Chalfant to Wm. Hoggatt reserves, in terms, no vendor's lien on the premises for the purchase money. It is also agreed that the notes and mortgages of the respective parties shall be considered in evidence.

Messrs. A. C. & I. J. Mouser, for the appellant:

The law does not favor secret liens. Rev. Stat. 1877, ch. 30, § 30; *Brookfield* v. *Goodrich*, 32 Ill. 363.

The taking of a note and mortgage to secure the unpaid portion of the purchase money was a waiver of any vendor's lien. 4 Kent's Com. 153; *Conover* v. *Warren et al.* 1 Gilm. 498; *Berger et al.* v. *Potter et al.* 32 Ill. 72; *Boynton* v. *Champlin*, 42 id. 64; *Moshier* v. *Meek et al.* 80 id. 80.

And even if not waived, Derby could not be permitted to avail himself of it as against the rights of the complainants, they being *bona fide* mortgagees of Hoggatt without notice of the existence of any lien. 4 Kent's Com. 154; *McLaurie et al.* v. *Thomas*, 39 Ill. 294; *Moshier* v. *Meek et al.* 80 id. 81.

Having taken a mortgage, the defendant Derby can not now be heard to assert his right to a vendor's lien. He must stand or fall upon his mortgage.

If complainants' title under their mortgage was revived by the revesting of the title in Hoggatt by the deed from Chalfant, of which there can be no doubt (2 Parsons on Contracts, 790, and R. S. 1877, ch. 30, § 7), their rights were then just the same as the rights of any new mortgagee would have been, and were perfect unless there then existed a new lien.

Mr. T. L. McGrath, for the appellees:

He who deals with public lands must exercise care. He must know that every requirement of the law has been ob-

served in giving him his title.   See *Powell* v. *Kettelle*, 1 Gilm. 491; *Cook* v. *Crabb*, id. 537; *Trustees of Schools* v. *Wright*, 11 Ill. 603.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Samuel Earp sold and conveyed the premises in controversy, to Wm. Hoggatt, on the 3d day of September, 1875, after the levy of the execution from the Logan circuit court, in favor of the school superintendent and against Earp. Afterwards, on the 22d of April, 1876, Wm. Hoggatt mortgaged the same premises to Elder and G. W. Hoggatt, and this is the mortgage under which appellant claims a prior lien.   Neither Earp, Elder, G. W. nor Wm. Hoggatt redeemed from the sheriff's sale, and when the time for redemption expired, all of their claims were cut off and extinguished, as the lien of the levy and the filing of the certificate of levy were prior to the sale to Wm. Hoggatt, and his mortgage to Elder and G. W. Hoggatt, and was a superior lien to the others, and by the sale and a want of redemption, all these intermediate liens and conveyances were wiped out and extinguished.

After the time for redemption had expired, appellant had no claim to a lien on the land.   His mortgage was extinguished, and the grantee in the sheriff's deed, or the school superintendent, holds an absolute title against Earp, Wm. Hoggatt, Elder and G. W. Hoggatt.   If, then, appellant has a superior lien, it is by virtue of the covenants in his mortgage and the omission of some duty by the superintendent of schools.   Appellant's mortgage is in the statutory form, which is declared to be equivalent to all of the covenants for title.   It then follows that any title that William Hoggatt subsequently acquired, inured to the benefit of appellant, in the same condition Hoggatt received it, and revived appellant's mortgage on such title.

Then what title accrued to appellant by the purchase by Wm. Hoggatt of the superintendent of schools?   Ap-

pellee does not claim that his mortgage was revived subject to a lien on the property for the balance of the purchase money. But appellant claims, that because the mortgage was not executed and delivered at the time the deed was executed by the superintendent of schools, his mortgage was thereby let in as a superior lien; that the school superintendent failed to take a mortgage for a considerable time after he executed and delivered the deed to Wm. Hoggatt, thereby reviving his mortgage.

Then, is appellant's mortgage let in as a superior lien by the superintendent of schools failing to record his mortgage for more than three months after it was executed?

The seizin of Hoggatt was not complete, because his delivery of the mortgage was at precisely the same time that he received the deed from the school superintendent. He was not, therefore, in equity seized of the title in such a manner that his title could inure to appellant under the covenants in his mortgage. The same transaction which invested him with title, divested it and restored it to his grantor. Neither grantor nor grantee intended to vest the title free from incumbrance in the grantee. Nor will equity hold that it was. Appellant's mortgage was no doubt revived, but subject to the mortgage for the purchase money.

The Recording act provides that all deeds, mortgages, etc., " which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice, and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be so recorded."

It is not claimed that appellant is a subsequent purchaser, but it is admitted that he is a prior purchaser by mortgage, his mortgage bearing date more than a year before his mortgagor purchased the title he now seeks to subject to the satisfaction of his debt.

The claim of the school superintendent is for purchase money for this land, whilst that of appellee is for money paid as surety for his mortgagor, secured by a mortgage on a title to this property, which failed, and left him without security until his mortgagor purchased on credit the title to this property.

Again, if the recording laws are held operative in such a case as this, by what means could the owner sell, and secure the purchase money by a mortgage, unless it was executed and recorded before the conveyance was made to the purchaser? Otherwise there must be a space of time between the execution of the conveyance and the recording of the mortgage, and no matter how short the period, the doctrine contended for would let in a prior mortgage that was not a lien on the title thus sold and conveyed. Such a construction of the recording laws would render the sale of lands on time, with a mortgage executed back to the vendor, impracticable in many cases.

In such a case as this it would virtually be to satisfy appellant's mortgage by selling the land belonging to the school fund, and to which the mortgagor did not have title. It is true that the superintendent of schools might have given a bond for a conveyance and thus have avoided all question as to priority of lien, but in equity should not this be considered as the same in substance? The vendor did not intend to release the land from a lien for the purchase money, and supposed by taking the mortgage he had effectually secured the lien, and in equity we think he did, and that it should be protected. The decree of the court below must be affirmed.

*Decree affirmed.*